UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-72-GWU

RHONDA RHAE SIX,                                                                  PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

Rhonda Six brought this action to obtain judicial review of an administrative denial decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

11-72 Rhonda Rhae Six

>    impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

11-72 Rhonda Rhae Six

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Six suffered from impairments related to chronic alcoholism, being status post fracture of the bilateral arms, being status post fracture of the left leg, and an affective disorder. (Tr. 13). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 16). Since the claimant would be able to return to her past relevant housecleaning work, she could not be considered totally disabled. (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

11-72 Rhonda Rhae Six

In determining that Six could return to her past relevant housecleaning work, the ALJ relied heavily upon the testimony of vocational expert Martha Goss. (Id.). The hypothetical question presented by the ALJ included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as an inability to ever climb ropes, scaffolds and ladders and "moderate versus marked" limitations in ability to deal with detailed instructions, maintain attention and concentration for extended time periods, interact appropriately with the general public, get along with co-workers and peers without distracting them or exhibiting behavioral extremes, being aware of normal hazards and taking appropriate precautions, travel in unfamiliar places and use public transportation, and set realistic goals or make plans independently of others. (Tr. 54-55). The ALJ also noted that the individual would retain the ability to deal with simple instructions, make judgments commensurate with the functions of unskilled work, respond appropriately to supervision and co-workers, deal with changes in a routine work setting and would work best in a repetitive, low stress-type job, non-production and out of direct contact with the public. (Tr. 55). In response, Goss testified that such a person could still perform Six's past work as a house cleaner. (Id.). The witness also identified a significant number of other jobs which could still be performed under the terms of the hypothetical question. (Tr. 55-56). Therefore, assuming that the vocational factors considered by the expert fairly characterized the plaintiff's

condition, a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Six was in an automobile accident in April of 2007 and was treated at the University of Cincinnati Medical Center. (Tr. 328). The plaintiff suffered ulnar fractures bilaterally and abrasions to the knees. (Tr. 329-330). The claimant successfully underwent surgery for open reduction and internal fixation of the left and right ulnar shaft fractures. (Tr. 338). Upon follow-up in June of 2007, x-rays revealed that the fractures were well-aligned but healing slowly. (Tr. 348). Long-term physical restrictions were not identified by the staff. (Tr. 321-365).

Dr. Scott Scutchfield later treated Six at the University of Kentucky Medical Center for her musculoskeletal injuries. In January of 2008, the doctor noted that x-rays of the left forearm revealed a healing fracture of the mid shaft ulna with a six-hole plate fixing it in good position and alignment with no sign of loosening of the plate or the screws. (Tr. 447). An x-ray of the right knee was essentially normal. (Id.). Physical examination revealed significant quad atrophy. (Id.). The elbow, wrist and hand had normal motion. (Id.). At this time, Dr. Scutchfield advised the plaintiff to avoid heavy lifting. (Tr. 448). This finding was issued despite the suggestion that the left ulnar fracture had not fully healed.

In March of 2008, Six again saw Dr. Scutchfield following another motor vehicle accident in which she suffered multiple abrasions and contusions,

particularly around the left knee. (Tr. 446). A CT scan of the left knee revealed significant effusion but no fracture. (Id.). An x-ray revealed that her left ulna fracture was going on to union. (Id.). The doctor had the plaintiff's knee placed in an immobilizer and to be non-weight bearing for one week. (Id.). Three to six months of rehabilitation would be required for the knee. (Tr. 447). However, the physician did not identify additional functional restrictions relating to this condition. Therefore, the physical factors of the hypothetical question were compatible with the opinion of Dr. Scutchfield.

Dr. Matthew McCune examined Six on two occasions. In December of 2007, the doctor noted her history of bilateral ulnar fractures requiring plates and screws and knee injury. (Tr. 367). She had also been wearing a brace on her left wrist. (Id.). Physical examination indicated decreased strength in her arms. (Tr. 370). Dr. McCune opined that she would be able to lift small objects, especially with both hands, but gripping heavy objects might be a problem for her. (Id.). While she would have no difficulty performing office work such as typing or writing, work requiring grip strength such as factory jobs would be difficult. (Id.). Dr. McCune saw the claimant again in June of 2008. (Tr. 526-532). Her range of motion was without limitation. (Tr. 529). The doctor opined that despite pain complaints, Six would not be restricted in her ability to sit, stand, walk, lift or carry small objects. (Id.). Office-type work would not be limited. (Id.). The physical factors of the hypothetical question were compatible with this opinion.

In January of 2008, Dr. Harold Markesbery of HealthPoint Family Care opined that the plaintiff was disabled. (Tr. 411). This opinion would be an opinion reserved to the Commissioner under the federal regulations and not binding on the ALJ. 20 C.F.R. § 404.1527(e)(1). The opinion would also be offset by those of Dr. Scutchfield and Dr. McCune. Therefore, the ALJ properly rejected it.

Six asserts that the hypothetical question did not fairly characterize her physical condition because the ALJ did not include any limitations on pushing, pulling, handling, grasping and gripping. She asserts that these would be appropriate to someone who had suffered bilateral ulnar fractures. However, no physician of record imposed such limitations. Therefore, the court finds no error.

Six notes that treatment records from the Bracken County Health Center contain a number of references to her suffering from hypertension. (Tr. 452-453, 455-460). However, the staff did not impose any functional limitations in connection with these findings. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Dr. David Swan, a non-examining medical reviewer, opined that the plaintiff's hypertension was not a "severe" impairment. (Tr. 533). Therefore, the court finds no error in the ALJ's handling of the evidence in relation to this condition.

The ALJ also dealt properly with the evidence of record relating to Six's mental condition. The plaintiff was treated at the Comprehensive Care Center from September of 2003 through March 2004 where she was noted to suffer from a

9

major depressive disorder, post-traumatic stress disorder, and polysubstance abuse. (Tr. 300). Long-term mental restrictions were not identified. (Tr. 286-320).

Psychologist Andrew Jones examined Six in December of 2007. Jones noted a diagnostic impression of an unspecified mental disorder. (Tr. 389). The plaintiff's Global Assessment of Functioning (GAF) was rated at 55, suggesting the existence of "moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. The examiner opined that she would be able to comprehend and remember one/two step instructions. (Tr. 390). She was thought to have deficits in interacting with supervisors, friends and the public. (Tr. 391). These restrictions are compatible with the mental factors presented by Goss. Jones indicated that uncertainty existed whether or not the plaintiff would be able to adapt or respond to pressures found in daily work settings. (Tr. 390). Since the examiner did not definitively impose a restriction, this would appear to be speculation. Therefore, the opinion of Jones supports the administrative denial decision.

Psychologists Jay Athy and Ilze Sillers each reviewed the record and opined that Six would be "moderately" limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended time periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes and responding appropriately to changes in the work setting. (Tr. 392-393, 508-509).

The mental restrictions considered by Goss were essentially consistent with these restrictions.

Six argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Six was found to be suffering from a potentially painful condition. However, even if she could be found to have satisfied the first prong of the so-called <u>Duncan</u> test, the claimant does not meet either of the alternative second prongs. CT scans of the head, cervical spine, thoracic spine and lumbar spine in April of 2007 revealed no acute fractures. (Tr. 330). X-rays of the shoulder were unremarkable. (Id.). Bilateral muscle strength was intact upon examination by Dr. McCune in December of 2007. (Tr. 369). The doctor reported no sensory deficits. (Id.). Range of motion was not decreased in either hand. (Tr. 370). In January of 2008, Dr. Scutchfield reported a healed surgical scar over the mid shaft of the ulna. (Tr. 447). Tenderness was not observed at the fracture site. (Id.). The claimant had full motion in her elbow, wrist and hand. (Id.). No sign of meniscal pathology or ligamentous laxity was noted in examination of the right knee.

11

11-72  Rhonda Rhae Six

(Id.).  In March, 2008 following the second motor vehicle accident, Six was noted to be neurovascularly intact.  (Tr. 446).  An x-ray revealed no obvious sign of fracture.  (Id.).  Therefore, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated the plaintiff's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 19th day of April, 2012.

Signed By:
*G. Wix Unthank*
United States Senior Judge